IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–00994–KMT

HOTTINGER EXCAVATING & READY MIX, LLC,

    Plaintiff,

v.

R.E. CRAWFORD CONSTRUCTION, LLC,
JEFF USELTON,
COASTAL ELITE, LLC,
PAUL JOHNSTON, SR.,
PAUL JOHNSTON, III,
EDGAR W. COX, JR., and
AKRON FDS, LLC,

    Defendants.

## ORDER

This matter is before the court on "Defendant R.E. Crawford Construction, LLC and Jeff Uselton's Motion to Dismiss; or, in the Alternative, Motion for a More Definite Statement." (Doc. No. 21, filed Apr. 4, 2014.) For the following reasons, Defendants R.E. Crawford Construction ("R.E. Crawford") and Jeff Uselton's[1] ("Uselton") Motion to Dismiss is GRANTED in part and DENIED in part.

### FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint, filed August 8, 2014 (Doc. No. 43), and are presumed to be true for purposes of this Order.

---

[1] Because the remaining defendants have not yet been served with Plaintiff's Amended Complaint, the court does not address Plaintiff's claims against them in this order.

Sometime prior to April 24, 2012, R.E. Crawford was hired by Defendant Akron FDS, LLC for the purpose of building a Family Dollar store in Akron, Colorado. (Am. Compl. ¶ 10.) Uselton was R.E. Crawford's construction manager. (*Id.* ¶ 12.) R.E. Crawford subsequently hired Defendant Coastal Elite, LLC to handle the process of hiring a local contractor to construct the building for the Family Dollar Store ("the Building"). (*Id.* ¶ 11.) Coastal Elite, through its agent or employee, Defendant Edgar Cox, hired Plaintiff to erect the Building. (*Id.* ¶ 15.) Defendant Cox informed Plaintiff that it would be paid a flat fee of $18,000.00 plus costs to erect the Building. (*Id.* ¶16.)

Initially, two other companies were hired to do the "dirt work" necessary to erect the building—which included filling and compacting the ground for the Building, filling and grading the parking lot, installing drain channels, and erecting necessary signs for the parking lot. (*Id.* ¶¶ 20-23.) After both of those companies quit the job (*id.* ¶¶ 21, 23), Defendant Cox requested that Plaintiff do the "dirt work" and told Plaintiff it would be compensated for its work. (*Id.* ¶ 25.) Initially, Plaintiff declined, but eventually agreed to do the "dirt work" for only its employees' hourly rate plus the cost of equipment and other requirements to complete this project. (*Id.* ¶ 26.)

Plaintiff asserts that it completed all the work it agreed to perform—namely the "dirt work" and then erecting the Building. (*Id.* ¶ 27.) Plaintiff alleges that while it was paid for some portion of the materials and/or services it provided, it was not paid in full for the materials and services it provided, despite multiple requests for payment. (*Id.* ¶ 34.)

## PROCEDURAL HISTORY

Plaintiff filed its original Complaint on October 29, 2013 in state court.  (*See* Doc. No. 3.) On April 7, 2014, R.E. Crawford removed the action to this court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and § 1441(b).  (*See* Doc. No. 1.)

R.E. Crawford and Uselton filed their Motion to Dismiss on April 28, 2014.  (*See* Mot.) On May 20, 2014, Plaintiff filed its "Response to Defendants R.E. Crawford Construction, LLC and Jeff Uselton's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement; or, in the Alternative, Motion for Leave to File an Amended Complaint."  (Doc. No. 24.)  R.E. Crawford and Uselton filed their Reply on June 6, 2014.  (Doc. No. 29.)

On August 8, 2014, Plaintiff filed a Motion to Amend Complaint.  (Doc. No. 42.)  R.E. Crawford and Uselton consented to the filing Plaintiff's proposed Amended Complaint, upon the condition that their Motion to Dismiss was deemed to apply to the Amended Complaint.  (Doc. No. 45.)  On August 18, 2014, the court granted Plaintiff's Motion to Amend and accepted Plaintiff's Amended Complaint as filed.  (Minute Order, Doc. No. Aug. 14, 2014.)  The court also deemed that R.E. Crawford and Uselton's Motion to Dismiss would apply to Plaintiff's Amended Complaint.  (*Id.*)

Plaintiff's Amended Complaint asserts state-law claims for civil theft, fraud, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, breach of contract, and unjust enrichment.  R.E. Crawford and Uselton move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, R.E. Crawford and Uselton argue that Plaintiff's tort claims are barred by the economic loss rule and Plaintiff's remaining claims fail to meet pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

*A.     Economic Loss Rule*

Under Colorado law, the economic loss rule provides that a "party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Standard Bank, PLC v. Runge, Inc.,* 443 F. App'x 347, 349 (10th Cir. 2011). This rule "serves to maintain a distinction between contract and tort law." *Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256, 1262 (Colo. 2000). Broadly, "[t]ort obligations generally arise from duties imposed by law . . . without regard to any agreement or contract," and "[c]ontract obligations, on the other hand, 'arise from promises made between parties [to] allocate risks and costs during bargaining.'"

*Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (citing *Town of Alma*, 10 P.3d 1256, 1262 (Colo. 2000)).

In determining whether the economic loss rule is applicable, the court must focus "on the source of the duty alleged to have been violated." *Id.* A duty arising in tort must be "sufficiently independent of the contract to preclude application of the economic loss rule." *Id.* at 351. A tort duty that is sufficiently independent of the contract at issue must meet two conditions: "[f]irst, the duty must arise from a source other than the relevant contract[;] [s]econd, the duty must not be a duty also imposed by the contract." *Registry Sys. Int'l, Ltd. v. Hamm,* No. 08-cv-00495-PAB-MJW, 2010 WL 326327, at *10 (D. Colo. Jan. 20, 2010) (citing *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009)). The court may look to three factors to aid its determination regarding the source of the duty at issue: (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized duty in tort; and (3) whether the tort duty differs in any way from the contractual duty. *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo. 2004) (citing *Grynberg v. Agri Tech., Inc.,* 10 P.3d 1267, 1269-70 (Colo. 2000)).

### 1. *Fraud, Fraudulent Concealment, and Negligent Misrepresentation Claims*

The court finds that that Plaintiff's fraud, fraudulent concealment, and negligent misrepresentation claims are plainly barred by the economic loss rule. These claims each allege that R.E. Crawford and Uselton misrepresented that Plaintiff would be paid, or concealed the fact that they did not intend to pay Plaintiff, for the services and materials it provided in erecting the Building and completing the "dirt work." (*See* Am. Compl. ¶¶ 46, 53, 59.) Plaintiff argues that

these claims are not barred because they are "for fraudulent inducement in which Defendant engaged prior to the existence of the contracts at issue." (Resp. at 6.)

While it is true that in some instances, "pre-contractual fraudulent inducement *might* be considered independent of the contract—and hence not barred by the economic loss rule," *Makoto USA, Inc. v. Russell,* 250 P.3d 625, 628 (Colo. App. 2009) (emphasis added), the court is not convinced that this proposition is applicable here. Plaintiff's Amended Complaint does not include any *factual* allegations suggesting that R.E. Crawford and Uselton knew or should have known at the time they made pre-contractual assurances of payment that Plaintiff would not actually be paid. Instead, the court finds that Plaintiff's fraud, fraudulent concealment, and negligent misrepresentation claims are all "predicated upon the mere nonperformance of a promise or contractual obligation"—namely R.E. Crawford and Uselton's alleged failure to pay Plaintiff as agreed in the contract upon completion of the Project. *H&H Distrib., Inc. v. BBC Int'l, Inc.,* 812 P.2d 659, 662 (Colo. App. 1990). As such, these tort claims are not independent from Plaintiff's contract claims. *Id.; see also Tara Woods Ltd. P'ship v. Fannie Mae,* 731 F.Supp.2d 1103, 1114 n. 7 (D.Colo.2010) (the economic loss rule "provides that relief in tort—i.e. fraud—does not lie where the party's injury derives solely from breach of the express or implied duties arising in contract"); *see also Haynes Trane Serv. Agency,* 573 F.3d at 962 (quoting *BRW,* 99 P.3d at 74) (even "if a duty would be imposed in absence of a contract, it is not independent of a contract that 'memorialize[s]' it").

Plaintiff argues that even if the economic loss rule bars its fraud, fraudulent concealment, and negligent misrepresentation claims against R.E. Crawford, it does not bar the same claims

7

against Uselton, R.E. Crawford's construction manager, because he was not a party to the contract between R.E. Crawford and Uselton. The court disagrees.

> When the economic loss rule bars a claim against a corporate entity, it may also bar claims against that entity's officers and directors, even if the officers and directors were not parties to the contract at issue.  For example, such claims may be precluded when the officers' and directors' duties, rights, obligations, or liabilities arise from the contract between the corporate entity and another.

*Former TCHR, LLC v. First Hand Mgmt. LLC,* 317 P.3d 1226, 1232 (Colo. App. 2012) (citing *Parr v. Triple L & J Corp.,* 107 P.3d 1104, 1108 (Colo. App. 2004)); *see also Top Rail Ranch Estates, LLC v. Walker,* 327 P.3d 321, 329 (Colo. App. 2014) (rejecting argument that fraud claims could not be barred as to a member of a development company simply because the member was not a party to the contract)  Thus, the mere fact that Uselton was not a party to the contract with Plaintiff does not render the economic loss rule inapplicable to Plaintiff's tort claims against him.

The case Plaintiff relies upon to argue that the economic loss rule is not available to Uselton, *Rhino Fund, LLLP v. Hutchins,* 215 P.3d 1186 (Colo. App. 2008), is clearly distinguishable.  In *Rhino Fund,* the owner of an investment fund diverted money from the fund for his personal benefit.  The court held that tort claims for civil theft and conversion were not barred by the economic loss rule specifically because (1) the investor's contract with the fund did not address the investor's remedies in the event of a diversion of money; (2) the owner had an independent duty not to convert the money in the fund; and (3) the owner's "conversion and theft were based on acts independent of the contractual breach . . . ." 215 P.3d at 1195.  *See also Harmon Contractors, Inc. v. Carter & Burgess, Inc.,* 229 P.3d 282, 291 (Colo. App. 2009).  Here, as discussed above, Plaintiff's fraud, fraudulent concealment, and negligent

8

misrepresentation claims are not independent from R.E. Crawford's contractual obligation to pay Plaintiff for the services and material it provided on the Project. As such, any duties or obligations Uselton had to Plaintiff arose from the contract between R.E. Crawford and Plaintiff. As such, the court finds that the economic loss rule bars Plaintiff's claims for fraud, fraudulent concealment, and negligent misrepresentation against Uselton to the same extent it bars the same claims against R.E. Crawford.

### 2.   *Civil Theft and Fiduciary Duty Claims*

The court is not convinced, at least at this juncture, that Plaintiff's breach of fiduciary duty and civil theft claims are barred by the economic loss rule. Both of these claims are premised on alleged violations of Colorado's Mechanics' Lien Trust Fund Statute, which provides as follows:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

Colo. Rev. Stat. § 38-22-127(1). The Trust Fund Statute further provides that "[a]ny person who violates the provisions of subsection (1) and (2)[2] of this section commits theft, as defined in section 18-4-401." *Id.* § 38-22-127(5); *see also* Colo. Rev. Stat. § 18-4-405 (providing a civil cause of action for violations of § 18-4-401(1)). Colorado courts have also held that the Trust

---

[2] Subsection 2 of the Trust Fund Statute provides an exception to subsection (1)'s requirement that funds disbursed to a contractor or subcontractor be held in trust when "such contractor or subcontractor has a good faith belief that such lien or claim is not valid or if such contractor or subcontractor, in good faith, claims a setoff, to the extent of such setoff." Colo. Rev. Stat. § 38-22-127(2).

9

Fund Statute creates a fiduciary duty running toward those identified in the statute that is breached if the funds to be held in trust are diverted to other obligations. *Alexander Co. v. Packard,* 754 P.2d 780, 782 (Colo. App. 1988).

It does not appear that any court has addressed whether the economic loss rule applies to claims asserted pursuant to the Trust Fund Statute. *See, e.g., AMEC Earth & Envtl., Inc. v. SolSource Energy Solutions, LLC,* 854 F. Supp. 2d 1014, 1018 (D. Colo. 2012) (deferring consideration of economic loss rule as it applies to claims under Colo. Rev. Stat. § 38-22-127 to a latter juncture). As a more general proposition, the Colorado Court of Appeals has recognized that a civil theft claim is barred under the economic loss rule if it cannot be proven without first proving that defendants also breached their contract with the plaintiff. *Makoto USA, Inc.,* 250 P.3d at 628. However, it is unclear whether this proposition applies with equal force to claims asserted pursuant to the Trust Fund Statute. Indeed, in the very same case, the appellate court recognized that "if the legislature intended to provide a remedy in addition to a contractual one, the statutory remedy would trump the economic loss rule." *Id.* at 629; *see also Boehme v. U.S. Postal Serv.,* 343 F.3d 1260, 1265-66 (10th Cir. 2003) (statutory remedy provided by Colorado's Forcible Entry and Detainer statute not precluded by the economic loss rule).

The parties have not addressed the more particular issue of whether the Colorado General Assembly intended that the Trust Fund Statute provide remedies above and beyond those available in contract.[3] The purpose behind the Trust Fund Statute is "to protect homeowners,

---

[3] The *Makoto USA* court held that there was no indication that the stolen property statute—*i.e.,* Colo. Rev. Stat. § 18-4-405—was intended to expand contractual remedies. 250 P.3d at 629. Although Plaintiff's civil theft claim is necessarily premised in part on § 18-4-405, the court does not believe that *Makoto USA* court's holding necessarily forecloses Plaintiff's civil theft claim in this case. More specifically, *Makoto USA* did not address the precise question at issue here of

laborers, and providers of construction materials from dishonest or profligate contractors. To meet this purpose, it imposes duties on the contractors to see that the subcontractors are paid." *Flooring Design Assocs., Inc. v. Novick,* 923 P.2d 216, 219 (Colo. App. 1995). Given that contractual remedies are typically sufficient to ensure payment, it certainly can be argued that the Trust Fund Statute was intended to provide extra-contractual remedies in the contractor-subcontractor context. However, it could also be argued the General Assembly intended that the Trust Fund Statute fill a gap in the law to ensure payment where there is no direct contractual relationship between the general contractor and the subcontractor. In the absence of some discussion of this issue, the court finds that dismissing Plaintiff's civil theft and breach of contract claims against R.E. Crawford and Uselton would be premature.

### B.     *Breach of Contract and Unjust Enrichment Claims*

R.E. Crawford and Uselton argue that Plaintiff's remaining claims for breach of contract and unjust enrichment should be dismissed pursuant to Rule 12(b)(6) because they fail to meet the pleading requirements of Rule 8(a)(2). The court disagrees.

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. 544, 555 (2007) (citation and internal punctuation omitted).

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) performance by the plaintiff or some justification for non-performance, (3) the defendant's failure to perform the contract, and (4) resulting damages to the plaintiff. *W. Distib.*

---

whether, by authorizing claims for civil theft and breach of fiduciary duty, the *Trust Fund Statute*, Colo. Rev. Stat. § 38-22-127, is intended to expand upon existing contractual remedies.

*Co. v. Diodosio,* 841 P.3d 1053, 1058 (Colo. 1992).  Here, Plaintiff alleges that R.E. Crawford hired Defendant Coastal Elite to "handle the process of hiring a local contractor" to construct the Building, and that Coastal Elite ultimately hired Plaintiff to (1) erect the Building in exchange for an $18,800 flat fee plus costs, and (2) to complete the "dirt work" in exchange for payment based on the hourly rate of Plaintiff's employees, plus the cost of equipment and other items needed to complete the "dirt work."  (Am. Compl. ¶¶ 11, 14, 16, 24-25.)  Further, Plaintiff alleges that, despite the fact it erected the Buildling and completed the "dirt work," R.E. Crawford and Coastal Elite failed to pay Plaintiff in full.  (*Id.* ¶¶ 27, 34.)  The court finds that these allegations provide R.E. Crawford with fair notice of the basis for Plaintiff's breach of contract claim as they plainly allege (1) that a contract existed between Plaintiff and R.E. Crawford or, alternatively, between Plaintiff and Coastal Elite, and (2) that R.E. Crawford and Coastal Elite failed to perform on the contract.  Fed. R. Civ. P. 8(d)(2) (permitting a plaintiff to set out two or more alternative statements of a claim).

To state a claim for unjust enrichment, a Plaintiff must allege facts showing (1) the defendant receive a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without compensating the plaintiff. *Sterenbuch v. Gross,* 266 P.3d 428, 437 (Colo. App. 2011).  A party pursuing contract claims may also pursue unjust enrichment claims in the alternative.  *See Lawry v. Palm,* 192 P.3d 550, 564 (Colo. App. 2008) ("A plaintiff is entitled to recover based on the unjust enrichment of a defendant when the plaintiff has no alternative right under an enforceable contract").  Under a straightforward reading of the Amended Complaint, Plaintiff plainly alleges that, if there was not an enforceable contract between R.E. Crawford or Coastal Elite and Plaintiff, then these

defendants received the benefit of the services Plaintiff provided in constructing the Building and completing the "dirt work," and it would be unjust to retain that benefit without compensating Plaintiff in full. As such, the court finds that the Amended Complaint also provides R.E. Crawford with fair notice of the basis for its unjust enrichment claim.

Accordingly, neither Plaintiff's breach of contract or its unjust enrichment claims will be dismissed for failure to meet Rule 8(a)(2)'s pleading requirements. Further, for the same reasons, the court rejects R.E. Crawford and Uselton's request for a more definite statement. Fed. R. Civ. P. 12(e) (A party is entitled to a more definite statement when "a pleading to which a responsive pleading is allowed . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.").

Therefore, for the foregoing reasons, it is

ORDERED that "Defendant R.E. Crawford Construction, LLC and Jeff Uselton's Motion to Dismiss; or, in the Alternative, Motion for a More Definite Statement" (Doc. No. 21, filed Apr. 4, 2014) is GRANTED insofar as it seeks dismissal of Plaintiff's fraud, fraudulent concealment, and negligent misrepresentation claims against R.E. Crawford and Uselton, and DENIED in all other respects.

Dated this 18th day of November 2014.

BY THE COURT:

_[signature]_

Kathleen M. Tafoya
United States Magistrate Judge